IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

FERNANDO RAMOS RIVERA,

    Plaintiff,

    v.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

CIVIL NO. 15-1798 (CVR)

## OPINION AND ORDER

### INTRODUCTION

On June 12, 2015, Plaintiff Fernando Ramos Rivera ("Plaintiff" or "claimant") filed this action to obtain judicial review of the final decision of Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security ("Commissioner" or "Defendant"), denying his application for disability benefits. (Docket No. 1).[1]  On August 4, 2015, the presiding District Judge referred this case to the undersigned for all further proceedings, including the entry of judgment. (Docket Nos. 5 and 6).[2] On November 6, 2015, the Commissioner answered the Complaint and shortly thereafter filed a copy of the administrative record. (Docket Nos. 9 and 13).  On May 25, 2016, Plaintiff filed his memorandum of law (Docket No. 22) and on July 13, 2016, the Commissioner filed her memorandum of law. (Docket No. 25).

---

[1] 42 U.S.C. Sec. 405(g), provides for judicial review of the final decision of the Commissioner.  "... [t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment without remanding the cause for rehearing".  Section 205(g).

[2] The government has already provided a general consent to proceed before a Magistrate Judge in all Social Security cases.  Title 28 U.S.C. Section 636(b)(1)(A), (c)(1) and (c)(2); Fed.R.Civil P. 73(a).

After careful review of the entire record, the Court AFFIRMS the Commissioner's decision.

## ADMINISTRATIVE AND PROCEDURAL HISTORY

Plaintiff, a former merchandiser, filed an application for disability benefits with an alleged onset date of disability of November 10, 2007. The application was initially denied, as was the reconsideration. (Tr. pp. 121-124, and 126-127). Plaintiff then requested an administrative hearing, which was held on October 1, 2013, where Plaintiff was present with counsel and testified regarding his alleged disabilities. (Tr. pp. 27-43). On November 21, 2013, the presiding Administrative Law Judge ("ALJ") issued an opinion, finding Plaintiff was not disabled from the onset date through his last insured date of June 30, 2011. (Tr. pp. 17-23). As part of his fact-finding responsibilities, the ALJ made the following findings of fact in his decision:

1. Plaintiff met the insured status requirements of the Social Security Act through June 30, 2011.

2. Plaintiff did not engage in any substantial gainful activity during the period from his alleged onset date of November 10, 2007 through his date last insured of June 30, 2011.

3. Through the last date insured, Plaintiff had the following medically determinable impairment: major recurrent depression with psychotic features.

4. Through the last date insured, Plaintiff did not have an impairment or combination of impairments that significantly limited the ability to perform

<u>Fernando Ramos Rivera v. Acting Commissioner of S.S.</u>
Opinion and Order
Civil No. 15-1798 (CVR)
Page No.  3

        basic work-related activities for twelve consecutive months.  Therefore, Plaintiff did not have a severe impairment or combination of impairments.

5.    Plaintiff was not under a disability, as defined in the Social Security Act, at any time from November 10, 2007, the alleged onset date, through June 30, 2011, the date last insured.

The Appeals Council subsequently denied Plaintiff's request for review, thus making the ALJ's decision the final decision of the Commissioner, subject to review by this Court. (Tr. pp. 1-7).

Plaintiff objects the ALJ's final decision denying him disability benefits, alleging the ALJ's decision was not based on substantial evidence because he should have proceeded with a further analysis.  Specifically, he posits that the medical evidence established that his impediment was "severe", instead of "not severe" as found by the ALJ at the second step in this case.  In such a case, Plaintiff's condition warranted further evaluation of his ability to do other work, considering his age, education and work experience.  Therefore, the ALJ should not have stopped the evaluation process at step two.

The Commissioner, on the other hand, asserts there is substantial evidence to support the ALJ's conclusion that Plaintiff did not have a severe medical impairment or a combination of impairments that would render him disabled at step two, and that the ALJ properly applied the special technique set forth in 20 CFR § 404.1520a in order to evaluate the severity of Plaintiff's alleged mental impairment.

**STANDARD**

To establish entitlement to disability benefits, the burden is on the claimant to prove disability within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146-47, n. 5 (1987). It is well settled law that a claimant is disabled under the Act if he/she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his/her previous work but, considering age, education, and work experience, cannot engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists, or whether he/she would be hired if he/she applied for work. 42 U.S.C. § 423(d)(2)(a).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a). A five-step sequential evaluation process must be applied in making a final determination as to whether or not a claimant is disabled. 20 C.F.R. §§ 404.1520; see Bowen, 482 U.S. at 140-42; Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982). At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he/she is, disability benefits are denied. §§ 404.1520(b). If not, the decision-maker proceeds to step two, where he or she must determine whether the claimant has a

medically severe impairment or combination of impairments. See §§ 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step through which the ALJ determines whether the impairment prevents the claimant from performing the work he/she has performed in the past. If the claimant is able to perform his/her previous work, he/she is not disabled. §§ 404.1520(e).

Once the ALJ determines that the claimant cannot perform his or her former kind of work, then the fifth and final step of the process demands a determination of whether claimant is able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience. The claimant would be entitled to disability benefits only if he/she is not able to perform any other work whatsoever. §§ 404.1520(f).

In the case at bar, the ALJ determined at step two that Plaintiff neither had a severe impairment, nor a combination of severe impairments. As such, Plaintiff was not disabled.

## LEGAL ANALYSIS

The Court's review in this type of case is limited to determine whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence. See Manso-Pizarro v. Sec'y of Health and Human Servs, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31 (1st Cir. 1999). Substantial evidence is "more than a mere scintilla and such, as a reasonable mind might accept as adequate to support a conclusion". Richardson v. Perales, 402 U.S. 389 (1971), *quoting* Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938). The court will set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on a legal error. See Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Rodríguez v. Sec'y of Health and Human Servs, 647 F.2d 218, 222 (1st Cir. 1981).

It is important to note that courts must give deference to the ALJ's interpretation of the medical record and although an ALJ is not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion, upon the existence of conflicts in the medical record from the report and sources, it is for the ALJ and not this Court to resolve them. See Nguyen v. Chater, 172 F.3d at 31; Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127 (1st Cir. 1981) (the resolutions of conflicts in the evidence

and the determination of the ultimate question of disability is for him [the ALJ], not for the doctors or for the courts); see also Rodríguez v. Sec'y of Health and Human Servs., 647 F.2d at 222.

In the present case, Plaintiff's main argument is that the ALJ should not have stopped at step two his inquiry into the five step process, but instead, should have proceeded to analyze his claim through the remaining three steps. In analyzing Plaintiff's claim, the ALJ first determined what medically determinable impairment Plaintiff suffered from, which could be shown by medically acceptable clinical and laboratory diagnostic techniques, which could reasonably be expected to produce Plaintiff's symptoms. Once said impairment was shown, the ALJ then evaluated the intensity and limiting effect of those symptoms and determined the extent, if any, in which they limited Plaintiff's functional capacity to work pursuant to Section 12.00c of the Listing of Impairments and set forth in 20 CFR part 404, Subpart P, Appendix 1, also known as the "paragraph B" criteria. In so doing, the ALJ examined the objective medical evidence as well as the credibility of the witness.

When a Plaintiff has a determinable mental impairment, the ALJ must proceed to evaluate Plaintiff's paragraph B criteria, which focuses on four functional areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence or pace and; 4) episodes of decompensation. Tr. pp. 22-23. The ALJ then uses a five-point scale of "none", "mild", "moderate", "marked", and "extreme", to rate a claimant's symptoms. 20 C.F.R. § 404.1520a.

Plaintiff stated at the hearing that he was unable to do any daily chores. However, the ALJ found that Plaintiff's allegations as to the activities of daily living were not supported by clinical findings in the record. This was done after the ALJ saw Plaintiff at the hearing, where the ALJ had the exclusive opportunity to examine Plaintiff's demeanor. (Tr. p. 22). The ALJ therefore found that Plaintiff had no limitation in this area. Id.

In the area of social functioning, the ALJ also found Plaintiff had no limitation, as again, although he alleged interpersonal difficulties and irritability, the ALJ found the record did not support these findings. (Tr. p. 22). Instead, the ALJ further opined that, during the hearing, Plaintiff did not exhibit the symptoms he complained of, and was open, sociable and provided adequate answers to the questions posed. (Tr. pp. 22-23).

Regarding the third functional area, concentration, persistence and pace, whereas Plaintiff complained of short attention span and difficulties in following instructions, the ALJ also found that the limitations were not supported by the record. In fact, the ALJ found Plaintiff's complaints unfounded, insofar as during the hearing, Plaintiff was coherent, lucid, responsive to questions, attentive, processed the questions without difficulty and responded to them appropriately and without delay. (Tr. p. 23).

In the last functional area, episodes of decompensation, Plaintiff did not have episodes over the extended duration (two weeks) as required by the regulations. Although Plaintiff was hospitalized due to an attempted suicide in May, 2010, the ALJ did not give full weight to this fact because the hospitalization was for a short period (eight

days) and he was released from the institution with a GAF of 65.[3] Upon Plaintiff's release, he was found to be active, alert and oriented, stabilized, coherent and relevant and cooperative. (Tr. p. 87).

Based on all these factors, and the fact that Plaintiff received a "none" or only "mild" limitations in the first three areas and there were no episodes of decompensation of extended duration, according to the guidelines Plaintiff's condition was correctly deemed by the ALJ as "not severe."

Plaintiff cites to the case of <u>Andrades v Sec'y of Health and Human Servs.</u>, 790 F.2d 168 (1st Cir. 1986) for the proposition that the ALJ should not have stopped his evaluation at step two with a denial of benefits, and instead, should have continued with the sequential evaluation. <u>Andrades</u>, however, is distinguishable from the present case, as it stands for the proposition that the five step analysis should not stop at step two, but only when the claimant is found to be unable to perform his past job. "In particular, benefits may not be denied at the Step 2 stage of the sequential evaluation process if a disability, whatever its level of severity, leaves a claimant unable to perform his or her past relevant work. In such event, further evaluation, designed to show whether the claimant can perform other work, is required." <u>Andrades</u>, 790 F.2d at 171. That is not the case here, as no findings were made that Plaintiff was unable to perform his past work. On the contrary, Plaintiff alleges a mental disability because he has been unable to find

---

[3] The Global Assessment of Functioning (GAF) is a numeric scale (0 through 100) used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of adults, e.g., how well or adaptively one is meeting various problems-in-living. The score is often given as a range. Since 2013, the GAF is no longer used in the DSM-5. A score of 61-70 means the person has some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, and with some meaningful interpersonal relationships.

work, not because he cannot perform it. The holding in Andrades is therefore inapplicable.

Plaintiff also found fault with the fact that the ALJ gave little weight to the treatment notes of Dr. Madeline Santos (Dr. Santos"), Plaintiff's treating physician. In so doing, the ALJ noted that Dr. Santos had not made any type of diagnosis of Plaintiff's condition, failed to give Plaintiff a GAF score or had any actual medical opinion as part of her treatment. The ALJ also mentioned that Dr. Santos failed to report any clinical findings in her notes, which instead seemed limited to replicating Plaintiff's subjective reports of his symptoms and seemed to uncritically accept as true all of what Plaintiff reported. Thus, Dr. Santos' notes did not present an accurate picture of her clinical findings. (Tr. pr. 21). The ALJ also opined that the treatment history was incompatible with the presence of a severe medical impairment because, although Plaintiff was claiming an alleged onset date of November, 2007, it was not until February, 2010, over two years later, when he sought psychiatric treatment. Even then, Plaintiff's visits to Dr. Santos were spotty and infrequent, and he went from September, 2010 through April 2011 without any treatment whatsoever. These reasons have great weight and are entitled to deference.

Plaintiff cites to First Circuit precedent to stand for the proposition that the ALJ improperly rejected Dr. Santo's treatment notes because they contained no clinical notes, Soto Cedeño v. Astrue, 380 Fed. App'x 1 (1st Cir. 2010). The Soto case, however, contained multiple tests that were performed on the claimant by both the treating physician as well as the agency physician, which is also not the case here. "In particular,

the doctor described his observations of Soto and the results of specific memory tests he had administered to her at her most recent appointment on October 26, 2004. He used the tests that were recommended on the agency report form he filled out, and the consulting psychiatrists, whose opinions the ALJ credited, had used similar tests, relying as well on their observations of Soto." Soto, 380 F. App'x 1 at 3. In comparison, the record here reveals no tests to have been performed by Dr. Santos, and further, the agency consulting physicians found there was simply insufficient information or evidence on the record to substantiate the presence of a disorder. (Tr. p. 115-116).

Finally, it is worth noting that the ALJ had the opportunity to personally assess Plaintiff's demeanor at the hearing, thus allowing him an important opportunity to assess his credibility regarding his condition. The ALJ noted that, during the hearing, Plaintiff was coherent, lucid and responsive to questions, was attentive and capable of concentrating and he appeared to be able to process the questions asked of him and respond without difficulty or delay. (Tr. pp. 22-23). It has always been the province the ALJ and not this Court to assess issues of credibility. See Valiquette v. Astrue, 498 F. Supp. 2d 424, 430-31 (D. Mass. 2007) ("[i]ssues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Secretary." (*quoting* Rodríguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965)). The ALJ was in the unique position to observe Plaintiff's demeanor and answers and come to his own conclusions regarding his testimony.

It has been well established that, although the record may support more than one conclusion, we must uphold the Secretary "if a reasonable mind, reviewing the evidence

Fernando Ramos Rivera v. Acting Commissioner of S.S.
Opinion and Order
Civil No. 15-1798 (CVR)
Page No. 12

---

in the record as a whole, could accept it as adequate to support his conclusion." Ortíz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (*quoting* Rodríguez, 647 F.2d at 222); see also, Richardson v. Perales, 402 U.S. at 401.  Where the facts permit diverse inferences, we will affirm the Secretary even if we might have reached a different result.  Rodríguez Pagán v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Lizotte, 654 F.2d at 128.

In view of the above, the Court finds no error with the Commissioner's conclusion that Plaintiff did not have an impairment that significantly limited his ability to work and further, finds that this conclusion is supported by substantial evidence in the record as a whole.

**CONCLUSION**

For the reasons above discussed, this United States Magistrate Judge finds there is substantial evidence on the record in support of the Commissioner's decision.  Hence, the Commissioner's decision is AFFIRMED.

Judgment is to be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 2nd day of August, 2016.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ RIVE
UNITED STATES MAGISTRATE JUDGE